Second case of the day, Justin Terrell Atkins v. Timothy Hooper, 19-30018 Let the appellate go first. Great. May it please the court, my name is Chrissy Calagaro and I represent Petitioner Justin Atkins. The repeated references throughout Mr. Atkins' criminal trial to the out-of-court accusations of an alleged accomplice, Lawrence Horton, a man the state now concedes was not a credible witness and so was never called to testify, violated clearly established Supreme Court Confrontation Clause precedent, and resulted in a conviction in violation of the Sixth Amendment. Counsel, I know you've got a well-prepared argument, walk me through this just a bit. What do you say the last reasoned decision is from the state court on the issues before us? That is a good question, one that I grappled with. The Louisiana Supreme Court doesn't give any reasoning for why it, for its merits adjudication I guess. It does cite a statute that says what the burden of proof is for a habeas petitioner and it does rely partially on an independent procedural ground. Counsel, let me posit that when we say, not we so much, but big court in DC says if you look through to other opinions, it's usually a very brief statement like affirmed that they're talking about and you're trying to find some sort of reasoning and Louisiana Supreme Court cites two Louisiana statutes, one talking about burden proof, the other broader than that, and then it has a whole paragraph, so anyway, that is an issue before us. Where would you stop us all the way back to the trial court, whatever that is, district court? Sorry, what was the question? Would you take us all the way back, your position is we need to go all the way back to the trial court, which I think is called district court? You know, I think it's a close call. My position was that we go back to the intermediate state appellate court where the decision there was also largely unreasoned, but they do cite a Supreme Court case and so if we look at their application of that Supreme Court case, that's what I was analyzing as the state court decision that we would be. A fine distinction. The Louisiana Supreme Court also did rely partially on an independent procedural ground saying that my client's counsel did not object at the trial. The state has, I argue, the state has waived that argument by not bringing it up to the district court even though being instructed to do so. On the EPA, is it not true that when we get a 2254 application, trial court, district court, it's supposed to look at the state court decision and decide whether it fails another two rounds of EPA. I don't see that in this magistrate judge's opinion. Is it there? Did the magistrate judge even go through the EPA steps and decide whether whatever decision it ought to be failed? It seems to me that the court didn't do that. The magistrate and then the district court affirming it didn't do that. Right. I think that's a good point. I don't, I have to look more closely at the magistrate's order. I don't remember it doing it explicitly. It seems like the magistrate was kind of just talking generally about the reasons why the state court ruled as a ruled, which ultimately boiled down to the determination that this statement wasn't admitted for the truth of the matter asserted. And so that's kind of what the magistrate judge analyzes, but it doesn't explain what state court opinion it's looking at that I recall. Well, proceed. And it does seem to me that it's a question about what should we review and what should we probably apply if the magistrate then upheld on by the district court didn't apply the right standard to reviewing whatever the appropriate state court opinion is, it does still seem that we have to do that. I agree. And in my brief, and I could jump to that part right now, if that would be helpful. What I proposed that the court look at was the intermediate appellate court decision and its application or what it seems to be its application of Woods v. Etherton, the United States Supreme Court case Woods v. Etherton, which I would argue was an inappropriate application of that case. Ms. Calgaro, if it is the state intermediate court that we're looking at, I mean, under EPA, are we sort of limited to looking at that one case? Or can we say, well, was the, I guess, rejection of the confrontation clause argument, was that an unreasonable application of any other Supreme Court case? Or are we really just confined to that one case that the state intermediate court cited? Or what's your view? My understanding, and I will admit I'm new to this area of law, but my understanding is that the court in, I think it was Wilson v. Sellers said, we're not just looking at, was there any possible reason that could substantiate the state court's opinion? What did the state court actually do here? And so I think we would have to look at the state court's application of Woods v. Etherton and be limited to that. You're probably familiar with our en banc decision in Langley that talks about this issue. And my understanding is that we, sure, the state intermediate court may have cited that one case, but that doesn't sort of confine our analysis. We can say, well, look, that case might not be the best case in the world, but there's really no other Supreme Court case that shows this as an unreasonable result. I mean, just forgetting the one case cited, is there, what do you think the best case from the Supreme Court is for your position on the confrontation clause? Well, one point on that, though, I mean, if you looked, we're not left with a lot when you look at the intermediate appellate court decision, but if you look through that decision to the district court, he does explain his reasoning. And he says it's because he determined that these statements were not admitted for the truth of the matter. All right. Well, so that's, I mean, that certainly rings a bell for me. You know, confrontation clause, if it's not hearsay to begin with, then hard to see how it violates the confrontation clause. In other words, if the testimony was admitted for some other purpose. So what's your best case from the Supreme Court that says, no, that's an unreasonable result? I don't think, I don't think we should look at it like that. I think the. Well, what if I wanted to look at it like that? Yeah. There's not, there's not a Supreme Court decision that is on all fours with the facts of this case. There isn't. And so what this court has said is, well, then we look at, it becomes an unreasonable application issue, not a contrary to issue. And we look at how they, how the state applied the clearly established confrontation clause precedent, which I'd have to point back to Crawford v. Washington for that rule. There's not a great Supreme Court decision that's on all fours here, but if there are several Supreme Court decisions that I think give us a lot of guidance and that do clearly establish the confrontation clause precedent that the state should have been following and that the state. Tell me about, I mean, so if you had to put together a few cases, what, what are the best ones for your, your, your position? So I would say, obviously Crawford v. Washington, which says that no testimonial statement should be admitted unless the witness is unavailable, which was not the case here. And unless the defendant had a prior opportunity to cross-examine, which the, that, which was not the case here. So I think this is just a clear violation of Crawford. If you look at some of the nuances that... So I'm curious about that. Where, where do you think the testimonial statement is that was admitted here? Where is that? The testimonial statement would be Horton's sworn statement to police while he was in police custody. That is a clear testimonial statement. And in fact, the Supreme Court has said, I think it was in Crawford, that this is the core testimonial statement that the confrontation clause is meant to protect against. Out of court... It seems to me, even without Crawford, I mean, really it goes back to Bruton and Maryland v. Gray. Right. Where, I mean, I don't think that the landscape changes under Crawford. I mean, those cases say you cannot admit, you cannot inculpate someone based on an accomplice's out of court statement, even when that accomplice is there in trial. And there's a reason to, a strong reason you need the evidence as to that person. Here, the person's not even there. I guess to me, the question is, and so the state court though says, well, but it wasn't done for the truth of the matter here. It was done to show investigation, the steps taken in the investigation. So, I mean, to me, the question is, is it unreasonable application of this Bruton line of cases to get around it by just saying, well, it's, it's for investigative background, which are the seven circuits says, and when we have cases saying this on direct appeals, that would effectively, you know, override the sixth amendment. If you could always say it's for background investigation. I completely agree. And, and just to touch on that, I know I started with Crawford because that's the seminal Confrontation Clause case, but you do have to go back to Bruton. And like you said, Gravy, Maryland, where the court applied it to a redacted confession. I mean, you have to look at all of these cases. And I hear, I mean, I hear what Judge Costa is saying. And I do think that's sort of the line of inquiry. But my understanding is on the unreasonable application prong. It's not enough to sort of say, look, there's some there's general principles out here. And I think the general principles pointed us to a different result here. What I'm looking for is a case that is more sort of procedurally factually similar to this case, not a redacted confession, but this kind of circumstance that I'm seeing in this case, that, that, I guess that's what I'm looking for when I'm asking for a close case. Right. Um, I don't, I don't think there is, I don't know of a Supreme court case that is, is close to this one factually. And so I would instead propose that we do look at how the state court applied the confrontation clause precedent unreasonably to these facts. And you, would you also agree that we need to find a Supreme court case? I mean, put to one side how close it has to be, but we're looking at Supreme court jurisprudence. We're not looking at our cases. We're not looking at. I do agree with that, that we are looking at Supreme court jurisprudence, but this court has said that when there's not a Supreme court case directly on all fours, we can still find that the state court unreasonably apply Supreme court precedent. If they, they identified the right principle and just misapplied it to these facts. And that's exactly what happened in Taylor v. Cain. I actually, I think this case is just a straightforward application of this court's decision in Taylor v. Cain. Okay. Remind him. Taylor wasn't at the deference. So it, it was analyzing it under. It's not a Supreme court case for sure, but it was analyzing the question under what is clearly established Supreme court law. And it has a discussion in there about not being, it cites the seventh circuit case I was referencing saying, you can't use this idea of it's a background step in the investigation to, to over, you know, undermine the confrontation clause. Right. Precisely. Exactly. It is. It's on all fours with this case in that it's the same procedural posture. It's applying the, the, the at the deference. And the facts are almost identical to this case. We're talking about a, an officer who testifies about a conversation he had with an unidentified witness. And he says, based on that conversation, I developed the defendant as a, as a suspect in this court found that that violated clearly established Supreme court confrontation clause plus precedent. And what this court said in a very thoughtful decision written by Joe Southwick is that it is well established under Supreme court precedent that, and I quote this cause it's very important. Police officers cannot through their trial testimony, refer to the substance of statements given to them by non testifying witnesses when those statements inculcate the defendant. And that is exactly what was done here. Yeah. So let me, thanks for compliment. I tried to do one thoughtful opinion of the year, otherwise too busy, but let us posit that it's the Supreme court of Louisiana opinion. That is the last reason opinion. And there the court cited two statutes from Louisiana. One is burden of proof on the applicant, the petitioner, the other subpart B of another statute repetitive applications. If the application alleges a claim which the petitioner had knowledge inexcusably failed to raise and can't raise it now. Is that, uh, in violation of clearly established spring court precedent to say failure to raise in the district court, this lower court, this, this, uh, confrontation matter? No, not, no, not at all that, that is an independent procedural grounds. The state can rely on, and it did rely on, and that would be dispositive here, except that the state waived that argument. The state was instructed by the district court. If procedural default was an issue here, please bring it up. And the state did not bring it up. And so my, I argue that that, that argument has been waived. And so that is not an issue for us. I'm doing this in steps. Uh, you say the first step, which was my question, uh, you would agree that is an adequate and independent state law ground. Yes. And so what would keep us from affirming upholding the denial of relief is only not that it's insignificant, but it's only the failure to raise that here. Yes. The waiver by the state. All right. And, um, not only in the district court, What does that do if we think that is the most, that is the proper decision for us to look to, uh, how can we ignore, if we think that's the right decision under AEDPA, the decision that the state court made? Well, you wouldn't be ignoring it, you would be deeming it waived by the state for, for judicial court. There is no state. It's not just an issue. It's, it's the evidence of what the state court did. So we have, it says, if there's no state court decision, uh, I don't quite, is there some case you have that says that, uh, there are, there are several cases from the state court relied on. And the last reason decision has not been what, for whatever reason addressed by the, by the prosecutor, by the state, uh, AEDPA is, is no longer relevant or what? No, I would say, I don't have a case that says exactly what we do in that situation. I might be able to find one, but I don't have one, uh, right off the top of my head. I do have cases from the circuit that say that the state can waive the issue of procedural default or contemporary contemporaneous objection, which the state did here. I don't remember if it was exactly like what you're saying. Um, that was in the Gochi, Gochicoa case. Um, the court said that the state waived that argument, but in fact, I wouldn't say we would be ignoring the Louisiana Supreme court decision. I would say we'd be looking at the Louisiana Supreme court decision who seems to have done some kind of merits determination, although it doesn't give us any reasonings there. And then also relied secondly on this procedural default, independent procedural default, um, because his counsel didn't object. And so when we're examining this, the, um, the Louisiana Supreme court's decision, there was two grounds there and the procedural default one has been waived by the state. So now we just look at the merits determination. Now there's not a lot to go on from the Louisiana Supreme court. So we look through it to the intermediate appellate court and we see that it applied. This Supreme court decision was the Etherton may, I guess if we look through that and then we look to the district court, like we were talking about a second ago, um, and, and you'd see that the real reasoning there was that the, um, the court determined that the truth of the matter, it was not being, um, introduced for the truth of the matter asserted. And there's a lot of, of case law from this court grappling with that and noting that it is very important not to let that reasoning, the, um, bolstering an officer's investigation subsume the confrontation clause rule and become an end run around the confrontation clause. All right. Counsel, I will hear you again after we hear from the state, Mr. Anderson. Good morning. Good morning. Um, judges and may please the court counts. Um, uh, of course, my name is Nick Anderson, Robert Anderson on the screen, uh, was a prosecutor in this matter. Um, are there any, uh, points that the court would wish me to ju, uh, to jump to first? Well, you're welcome to take the course that you want. I'm interested in sort of walking through it, but if you want to start there, what is the proper decision from Louisiana state courts that we should be relying on and how does that apply to what we are doing now and, and, uh, particularly on, on the idea that the Supreme Court, at least Louisiana relied on procedural points. Yeah. Yes, sir. Um, well, of course, I believe that the, uh, the court owes the, uh, at the deference to the, uh, uh, state court, um, the state court initially, the, the U S the Louisiana district court that had, uh, a, uh, an adjudication on the merits on the claim of the petitioner, uh, which was the, uh, confrontation falls. Then, of course, the second circuit, uh, denied Ritz on that as well as then, of course, the Louisiana Supreme Court. And I would state that the, uh, Supreme Louisiana Supreme Court, um, even though it raised a procedural issue that they had denied it on the merits as well, um, quite understand what you said, say the last thing again, that even though the Louisiana Supreme Court raised a procedural issue that they had denied it on the merits as well, why didn't the state and when the magistrate said, you know, brief, whether there's a procedural default here and why didn't the state press that below? That's a good question. Uh, like, um, like Miss Caliguero, I'm kind of, I'm a little new to the, uh, to this post conviction relief, um, procedural, uh, part. And I, um, uh, I cannot answer that question at this point in time. I'm not sure. Well, did you mean to wave it? No, sir. No, I did not mean to. What? I certainly wouldn't mean to wave any argument that I had, um, uh, although I do think that I addressed, um, I'd have to review my, uh, the magistrate judges, uh, ruling. But I think she, uh, she mentioned that as well, but, uh, I think this court can address that. Sue Esponte. Anyway, you're, you're asking us to address it, Sue Esponte, even though you haven't raised it. Yes, sir. Okay. Let me ask you a question about the merits, the hypothetical. Yes, sir. Let's say it's a, it's a murder prosecution and officer, the detective detective doe is on the stand and the prosecutor says, all right, I want to walk through your investigation and they go through a few steps. And then he says to detective doe, and did you talk to the only eyewitness to the murder? And detective doe says, yes. Prosecutor says, and, and did he identify who shot the gun? The detective says yes. And the prosecutor says, and after that, um, did you go get an arrest warrant for the defendant? And detective doe says yes. Would that be a confrontation clause violation? Uh, that, that's, that sounds very similar to what the, uh, I think the United States V the, uh, Jones case was the art where Mr. Arterbury was the, um, was the witness that they talked to. Um, that's a close question, but that's not the case here. We have two eyewitnesses who were actually in the room when this, uh, robbery, that gets to the harmlessness, which I do want you to hear from you on, but, but on whether it's a hearsay problem. And it just seems to me, and I don't think that that hypothetical is that different from here. I mean, this isn't a murder. I get that, but, but I don't think it's that different in terms of how the testimony was elicited. I mean, let me ask it another way. What is the probative value? What is the value of, um, mentioning who the detective talked to, um, if not to show the truth of the matter asserted, I mean, I just don't understand the probative value of, Oh, it shows a step in the investigation. I mean, it, it is, is highly, highly probative. It's the most probative issue in the case to have an eyewitness identify the defendant. Certainly. But the, uh, you know, the sequence of the investigation and that's what I was trying to get at with regard to detective Dowdy is the sequence of how, how this progressed. Um, and that's, that's the only reason that that was, uh, uh, why does that matter to the jury? I understand some background. Did you investigate the case? Did you end up after your investigation, did you end up arresting the defendant? I mean, what's the, what is the value, the non-truth value of, of eliciting what the, the witness Horton said, um, in terms of who he, who he ID'd, uh, just to, uh, just to show the sequence to the jury as to how this, uh, transpires, uh, how a, how a warrant was obtained. And then, uh, and then from immediately from there, we go on to the eyewitness testimony of the, uh, of the two victims, but I guess what's especially troubling to me here is that it's in an opening Horton's testimony was used as substantive evidence of guilt. And then I get maybe, you know, maybe because you met with him, you didn't decide at the time that was, you thought he was going to testify, but that's out there as, as this is substantive evidence of guilt, ladies and gentlemen of the jury, what Horton says. But then the defendant never has a chance to cross-examine Horton, who you yourself, I guess, ended up deciding wasn't credible enough to put on the stand. And the jury never hears that he wasn't credible enough to put on the stand. Well, yeah, sir. I, and I wanted to address that. That was a, I would, I would say that's a poor choice of words on my part in the, uh, in the brief as to whether or not he was credible or not. I did meet with him. Uh, I did, uh, determine that, uh, the, the evidence was weighty enough that I did not need his testimony. Uh, he was, if I'm recalling correctly, cause this has been some time, uh, inarticulate mumbled, uh, convicted felon, of course. And I preferred to go with the two witnesses who were actually in the room who didn't, who were articulate enough to explain the, uh, the situation to the jury and who had no prior felonies except for one. Oh, judge Costa raised the issue of harmless air, which would, we would also be doing sua sponte. Uh, there is some support for doing that. Help us with harmlessness. What, uh, you need obviously to convince us that the evidence is overwhelming without this, uh, and proper evidence. If that's what we end up including, it was, uh, hearsay evidence. So, um, what's on your side of the, uh, scale on evidence showing this is the guy? Oh, yes, sir. Your honor. Uh, you know, Taylor versus Kane was mentioned, uh, and I would say I'm talking about case law. I'm talking about evidence. What evidence is here that you had introduced or it was before the jury, uh, that this was a right culprit? All right. The situation was there were three gentlemen in a small room. Uh, they were drinking. They had just come in from, uh, from work. Uh, their boss man had, uh, let, dropped them off and dropped off a check for one of them, the victim in the armed robbery and, uh, daylight time they were in the room altogether. They all knew each other. And who among those testified? Give me some names who testified. Here's a fellow who did the beating and was involved in the robbery. All right. Tom Harris was the one who was beat, uh, by Mr. Atkins with the pistol. Uh, he is, he, his, um, charge on that was aggravated battery. The robbery was to a Robert Jones who was beat, uh, and an older gentleman, unfortunately for the state and for him, of course, he passed away shortly after this, um, this robbery. Uh, the autopsy revealed it was, uh, due to other, um, uh, issues. However, he passed away. So I have Tom Harris who is also there. And then a Howard Bishop. Uh, these two were sitting on a couch directly across from Mr. Jones. Uh, they testified that Atkins comes who they knew as J money or money comes in the room, goes directly towards Robert Jones and says, where's the money? Give it up. Uh, he starts at that point to hit Mr. Jones with the rock with the pistol. Tom Harris then goes to his friend's aid, try to stop that. And that's when he is hit with the butt of the weapon. And I think I got the picture. My main concern is, is who testified and what their, uh, point of view was about perspective. Literally they were there. One of the things in the, since we're complimenting previous written decisions, the very abled order on COA, in this case, uh, one of the things that was pointed out in that was that these people were, I don't know how many sheets to the wind, but they're pretty well intoxicated. Uh, I don't think sheets were mentioned in the order on COA. There are things that a defense counselor could do with, and probably did do with that testimony here. How does that weigh in our harmlessness that we have? Is it a fair assessment? Did we get carried away, uh, and saying these people sufficiently drunk that maybe their evidence might've been, um, less convincing to jurors and therefore this statement hearsay statement was more relevant. Help me with the drunkenness or anything else that I will hear from the other side in just a few minutes that might call those witnesses into question. Sure. Uh, they were cross-examined extensively over this. Uh, the, uh, attorney for Mr. Atkins at the trial, uh, cross-examined both Mr. Bishop and Mr. Harris, uh, as to what they were drinking, when they had started drinking and their recollection of the, uh, events that day. Um, however they were, he was unable to, uh, put a dent in their testimony. My opinion, uh, both testified who the assailant was, uh, the knew him by, um, street name and later on picked him out of a lineup and in the courtroom. Immediately. Uh, they were, they were under no, um, uh, equivocation as to who had done the, uh, robbery and the battery. All right. That answers my question. Uh, you can proceed anything else you want, or maybe you've covered it. Um, judge, I would just, uh, I would, I would point out a few things. Judges. Um, certainly, uh, the U S versus Kizzy case addresses harmlessness. Um, there were five factors to involve involved there. The importance of the witness testimony in the prosecution's case. I will say that, you know, contrary to counsel's, um, um, statement about repeated references to Horton, uh, there are only from the state. There are only, um, about 19 lines out of 6,400 of this trial, no more than Uh, that's less than 1% of the trial devoted to Horton from, uh, the state. Uh, there is the overall strength of the prosecution's case. Of course, we just went over that. That's two, two eyewitnesses. Um, one of whom actually knew the defendant by name, by street name, the other Howard Bishop who picked him out of the lineup and in courtroom. So, uh, these, um, the other cases are distinguishable, uh, based upon the strong identification of the defendant by the witnesses. Likewise, in Cain, there was a, uh, the witness testimony in Cain, the court noted was markedly indefinite, uh, not the case here. Uh, I would state that the one, the one case that is most like this case in regards to, uh, factual, and I almost hate to raise it, but it's the U.S. versus Sarli case. Uh, that was one where there was, um, uh, very, very minimal, um, very minimal statements by the prosecutor and by the detective with regard to the, to the, uh, confidential informants, um, statement. Yet even that case, there were more, there was more to the statement than what we have here. What we have here is just a generic, innocuous, benign reference to you talk to Horton and after that you obtained a warrant. That's weird. Why would you hate to raise that case, Mr. Anderson? Is it because I dissented in it? Yes, sir. It's still a majority opinion that I'm bound to follow now, not withstanding all the errors in it. Potential potential errors. But you have anything else for us, Mr. Anderson? No, sir. I think that'll conclude. You closed on a good note. Thank you. We'll hear in rebuttal. Sorry about that. I would like to address the issue of harmlessness because I think that is a very important issue here. Although I will note again that the state waived it and the court does not need to reach it at all. You accept that we are a precedent that entitles us to reach out and grab? Yes, I do accept that. But I, um, I know this court is also very, um, I mean, the court in Jones v. Kane recognized that the issue of harmlessness can be waived by the state and the court doesn't need to reach it, but here, even if the court does reach it, it should be. Um, the, the, the constitutional violation here should be deemed not harmless, even under the Brecht standard, which would apply here. The, the, the rest of the evidence presented against my client was far from overwhelming. Um, first of all, there was no physical evidence whatsoever, no footprints, no fingerprints, no weapon ever found, no orange shirt ever found, no bloody clothes, despite the amount of blood that was described as being at the scene of the crime. None of that. The only evidence against him. Help me with these two eyewitness identifications. Is it really just their intoxication? I mean, that's just about as good of evidence as you will usually have in a criminal trial, two eyewitnesses saying, this is the guy. What's the real, uh, undermining in your mind of the strength of that evidence? Yeah. I mean, I think the, the high detectives described them as highly intoxicated, bloodshot eyes, slurred speech, barely able to walk. One of them was described as incoherent. The other one had a severe head wound and had to get rushed to the hospital. And this all undermined. Didn't they both know Adkins? This was not a stranger to them? No. So I do think that the, I think the state exaggerates that evidence a little bit. If you look at the testimony that came out, uh, Harris said, oh, I'd seen him. I seen a man who went by the nickname of money a few times in the neighborhood. Didn't know him well at all. And the Bishop's testimony was even weaker on that point. It's not even clear. He didn't know him. And when Bishop was interviewed at the scene of the crime, he did not identify Jay money. He only identified Horton, which you would have expected him to do if he had just seen someone who knew commit the crime. He does identify him in a photographic lineup two weeks later, but there's evidence that comes out of the trial that Bishop actually was shown the picture of my client before he picked it out of the lineup. So there was, does that really happen? Yeah. Well, that's what, um, that's what Harris testified that he showed the picture to Bishop before he brought it over to the detectives. And then he picked it out of the lineup. What about Williams's testimony? Yeah. And that was the last point I was going to bring up. Um, Daryl Williams who came across as, or it seemed like from the transcript was unbiased and, um, a credible witness. He said several things that completely undermine the accounts of Harris and Bishop. So when you take all of this together, I think that you're left with, you know, Mr. Anderson said, well, the defense wasn't able to put a dent in Harris and Bishop's testimony. That's because that dent was filled with Horton's confession. This was significant evidence. And then, and the jury who was probably left with a lot of questions about the credibility of Harris and Bishop were able to rely and fall back on the fact that Horton, who was a central figure at this trial, I didn't count the amount of lines, but he came up constantly. He was central figure at this trial. And jury was told that he not only confessed, but that he implicated the defendant as his accomplice. That is extremely damaging hearsay evidence that came in at this trial. And, and I just want to point out one of the, he described it as benign. This was not benign. He just, he discussed Horton's testimony in opening statement, provided a roadmap to the jury about how to use that, that, um, out of court statement as proof of guilt. And then he brought it back up in both detective Dowdy's testimony and in the closing argument. All right. Counsel, um, we appreciate your argument. You both brought us, uh, Mr. Anderson. I'm going to say something about the counsel on the other side for a specific reason, but don't say that. And I'm anyway, uh, minimizing your contribution, but I want to thank Ms. Calagaro, who I believe is pro bono counsel, uh, who agreed to take on this case after we granted the COA. It's been very helpful to us to have two able advocates on both sides. We'll try not to impose on you too often, but it was a privilege. Thank you so much. Certainly. Thank you very much, Mr. Anderson as well. We are in recess.